UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KEVIN AND BETINA JOHNSON, | ) | |
| Plaintiffs, | ) | CIVIL ACTION |
| | ) | |
| | ) | Case No. 1:15-cv-10935 |
| v. | ) | |
| WELLS FARGO BANK, N.A.; | ) | |
| SERVICELINK, LLC; AND | ) | Honorable Virginia M. Kendall |
| SERVICELINK FIELD SERVICES, LLC, | ) | |
| | ) | JURY TRIAL DEMANDED |
| Defendants. | ) | |

## FIRST AMENDED COMPLAINT

Plaintiffs Kevin and Betina Johnson, by the undersigned lawyers, file this first amended complaint against Defendants Wells Fargo Bank, N.A., ServiceLink, LLC, and ServiceLink Field Services, LLC (collectively "Defendants") as follows:

### NATURE OF THE ACTION

1. This action requests damages resulting from Defendants' violations of the Fair Debt Collection Practices Act ("FDCPA") and the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), and for Defendants' trespass, conversion, and negligence.

2. All of the claims stem from Defendants' illegal debt collection with respect to Kevin Johnson's home mortgage loan. Defendants illegally broke into Johnson's home without authorization, changed the locks, stole Johnson's belongings, and damaged the real property.

### JURISDICTION AND VENUE

3. Subject matter jurisdiction is conferred upon this Court by 15 U.S.C. §1692k (FDCPA) and 28 U.S.C. §§1331 & 1337, as the action arises under the laws of the United States. Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. §1367.

1

4. Diversity jurisdiction is conferred upon this Court pursuant to 28 U.S.C. §1332(a), as there is complete diversity between the parties, all Defendants are foreign corporations, and the amount in controversy exceeds $75,000.00, exclusive of costs and fees.

5. Venue is proper pursuant to 28 U.S.C. §1391, as the subject property is situated in this District and a substantial part of the events or omissions occurred in this District.

## PARTIES

6. Plaintiffs KEVIN and BETINA JOHNSON are natural persons who currently reside at 2811 Henley Lane, Naperville, IL 60540. At all times relevant, Kevin also owned and resided in a single family home located at 2312 Emerald Lane, Yorkville, IL 60560.

7. Defendant WELLS FARGO BANK, N.A. ("Wells Fargo") is a California corporation with its principal place of business in California. Wells Fargo is in the business of lending and servicing mortgage loans across the country, including in Illinois.

8. Defendant SERVICELINK, LLC is a Delaware corporation with its principal place of business in Pennsylvania. ServiceLink, LLC is in the business of providing home preservation and debt collection services on behalf of mortgage lenders and servicers across the country, including in Illinois.

9. Defendant SERVICELINK FIELD SERVICES, LLC is a Delaware corporation with its principal place of business in Pennsylvania. ServiceLink Field Services, LLC is in the business of providing home preservation and debt collection services across the country, including in Illinois.

10. ServiceLink, LLC and ServiceLink Field Services, LLC (collectively "ServiceLink") are Wells Fargo's agents, property preservation specialists, third-party vendors, and debt collectors for the subject loan.

**GENERAL ALLEGATIONS COMMON TO ALL COUNTS**

11. For the last 10 years, Plaintiff Kevin Johnson has worked as a high school teacher in Joliet, Illinois, teaching U.S. History and American Government.

12. On November 10, 2010, Kevin executed a mortgage loan with Wells Fargo for the purchase of his family home located at 2312 Emerald Lane, Yorkville, IL ("subject property").

13. The loan required monthly payments of principal, interest, taxes, and insurance. Wells Fargo remained the loan servicer through the date of this complaint. For two years, Kevin made his monthly payments and seemingly had no issues regarding his loan.

14. On February 26, 2011, Kevin married Plaintiff Betina (Dunson) Johnson.

15. Betina is not a party to Kevin's mortgage loan contract with Wells Fargo.

16. In August 2012, Kevin and Betina had their first son, Khai.

17. The Johnson family continued to live at the subject property (hereinafter Kevin and Betina collectively referred to as "the Johnsons").

    a. **The Loan Modification**

18. In October 2012, Wells Fargo sent Kevin a notice stating that his monthly payments were increasing due to increased real estate taxes. The increase was unexpected and substantial, taking Kevin's monthly payment from approximately $1,900 to $2,500.

19. In January 2013, while Kevin was current on his payment obligations, Kevin called Wells Fargo for assistance due to the increased monthly payments. A Wells Fargo representative informed Kevin that Wells Fargo would reduce his monthly payments through a loan modification, but only if Kevin defaulted by missing three monthly payments.

20. Following Wells Fargo's instructions, Kevin defaulted on the loan for three months.

3

21. In April 2013, Kevin began working with an assigned Wells Fargo "Home Preservation Specialist" named Nereida Longoria ("Longoria"). Longoria mailed Kevin a loan modification application packet. Kevin completed the application and faxed it to Longoria as instructed.

22. This was the beginning of an endless process of submitting the same documents to Wells Fargo, only to be told by Longoria that the documents were never received. Kevin faxed the same documentation to Wells Fargo as instructed countless times over several months.

23. In June 2013, Wells Fargo advised Kevin that he had qualified for a "trial" loan modification, whereby Kevin had to make three monthly trial payments in June, July, and August 2013. Kevin made all three payments as required.

24. In July 2013, Kevin began calling Longoria twice a week to determine the next steps after the trial period. Kevin would leave messages, but would not receive a return call.

25. In August 2013, after making his third trial payment, Kevin would call Longoria everyday. Kevin would leave messages but would not receive a return call.

26. Also in August 2013, since his assigned Home Preservation Specialist was not responding, Kevin called other Wells Fargo phone numbers and spoke with several representatives. One representative finally advised Kevin to make a fourth trial payment for September 2013.

27. Kevin made his fourth trial payment for September 2013. Later in September, Kevin received a mortgage statement from Wells Fargo that stated he was eight months delinquent, did not acknowledge the loan modification, and did not acknowledge or apply his four trial payments to his account. Kevin continued to call and speak with various Wells Fargo representatives for clarification, but was not given any answers or assistance during any of the calls.

4

28. In October 2013, Longoria contacted Kevin for the first time since July. She apologized, said she was busy, and told Kevin that the permanent loan modification should be finalized and sent to Kevin in 30 days. Nothing happened for six months.

29. In March 2014, Wells Fargo informed Kevin that he was awarded a permanent loan modification. Wells Fargo sent a notary to Kevin's home so he could sign and notarize the permanent modification paperwork. Several weeks later, Wells Fargo falsely advised Kevin that he had been denied the permanent modification because he failed to return all of the required documents.

30. At that time, Kevin lost all trust in Wells Fargo and succumbed to the fact that he would not receive a loan modification as promised. Kevin stopped making payments, hired a realtor, and listed the subject property for sale to mitigate his damages. Kevin informed Wells Fargo of his intent to list and sell the property via short sale.

31. At this time, Betina purchased a smaller home in Naperville, Illinois for the family. The Johnsons slowly began moving out of the subject property.

32. From October 2014 through May 2015, the Johnsons were regularly present at the subject property. The Johnsons kept the lights and gas on, and the heat set at 66 to 68 degrees.

33. The Johnsons kept many of their belongings at the subject property to later move or sell.

34. Additionally, the Johnsons kept furniture in the subject property to present a furnished, attractive home to potential buyers during showings. The property was in excellent condition.

35. From October 2014 through May 2015, there was a "for sale" sign in the front yard.

36. The Johnsons' realtor conducted several showings to potential buyers.

5

### b. Wells Fargo's Hiring of ServiceLink

37. At the end of April or beginning of May 2015, and unbeknownst to the Johnsons, Wells Fargo hired ServiceLink as its debt collector and "property preservation" specialist.

38. On approximately May 7, 2015, and unbeknownst to the Johnsons, ServiceLink forcibly entered the subject property without authorization and changed the locks.

39. Shortly thereafter, an unknown individual forged a check dated May 8, 2015 from Kevin's personal checking account at Chase Bank.

40. On approximately May 14, 2015, Kevin discovered the forged check when he reviewed his online checking account and noticed inaccuracies related to a check that he never drafted.

41. Kevin immediately called Chase to inquire about the inaccuracies. Kevin went through the process at Chase's fraud department. During the call, Kevin and Chase determined that a check was forged and written by (and to) an unknown individual for approximately $2,000.

42. At that point, Kevin knew that someone had entered the subject property without authorization and stole his checkbook that was in a locked cabinet at the subject property.

### c. ServiceLink's Breaking and Entering of the Subject Property

43. On May 15, 2015, the Johnsons went to the subject property to investigate. They discovered the locks changed and the realtor's lockbox cut and discarded on the ground.

44. ServiceLink posted a notice on the door directing Kevin to call either Wells Fargo or ServiceLink regarding the "vacancy" of the property. The notice stated that the property had been "temporarily secured," the door locks replaced, and the plumbing system "winterized."

45. Also on May 15, 2015, Kevin called Wells Fargo at the number listed on the notice and asked the representative why the locks were changed and why nobody had notified Kevin. The representative said she did not know.

46. Kevin demanded the keys to his property. The representative stated that Kevin would receive the new keys from Wells Fargo in approximately three days. The keys did not arrive as promised. Kevin called Wells Fargo every day thereafter requesting the keys. During this period, the Johnsons did not have access to the subject property.

47. Three weeks later, on approximately June 6, 2015, Kevin received the replacement keys from Wells Fargo. The Johnsons immediately returned to the subject property.

48. Upon entering the property, the Johnsons discovered that all of their family's property was either stolen or damaged by ServiceLink. This included valuable items, sentimental personal items, and family heirlooms that cannot be replaced. ServiceLink severely damaged the real property.

49. The items that ServiceLink stole from the subject property included, *inter alia*, the Johnsons':

      i. checkbook and checks;
     ii. washer;
    iii. dryer;
    iv. dining room table;
     v. kitchen table;
    vi. office furniture;
   vii. other small furniture;
  viii. shoes;
    ix. computer;
     x. baby clothes;
    xi. toys;
   xii. paintings; and
  xiii. jewelry.

50. Additionally, ServiceLink broke into the Johnsons' locked file cabinet and stole documents and files containing sensitive personal information. ServiceLink stole the following sentimental personal items and family heirlooms from the Johnsons that cannot be replaced:

   i. a blanket knitted by Kevin's grandmother right before she passed away (for the Johnsons' son Khai);
   ii. diplomas;
   iii. baby photos;
   iv. Betina's senior photos;
   v. a fur coat from Betina's late grandmother, custom made with her grandmother's name stitched into it; and
   vi. a sentimental motorized car for Khai from Khai's great grandparents.

51. Moreover, ServiceLink damaged or discarded other items at the subject property by:

   i. ripping the thermostat off the wall;
   ii. throwing personal belongings all over the floor;
   iii. stealing copper from within the walls; and
   iv. ripping up Betina's deceased grandmother's obituary.

52. Aside from the locks being changed, there were no signs of forced entry.

53. Kevin immediately called the Yorkville Police Department to report the incident and the theft. The police officer informed Kevin that the incident was "more of a civil matter and not a police issue."

54. At no point in time did Wells Fargo or ServiceLink contact the Johnsons to ascertain whether they resided at the subject property or to request authorization to enter the subject property.

55. At no point in time did Wells Fargo or ServiceLink obtain a court order granting them a right to possession of the subject property.

56. The Johnsons demanded that Wells Fargo and ServiceLink return their stolen property and replace the damaged property. Despite the demands, Wells Fargo and ServiceLink have failed to return, replace, repair, or pay the reasonable value of the property.

57. As a result of the damage to the real estate, Kevin was prevented from selling the property at its fair market value. Kevin felt he had no choice but to give up on a short sale and file bankruptcy to avoid a large deficiency that now existed because of the substantially reduced property value.

58. Interestingly enough, in September 2015, Wells Fargo sent Kevin a notice of its intent to force place vacant property insurance. Upon information and belief, Wells Fargo and ServiceLink have made (and profited from) an insurance claim on Kevin's homeowner's insurance or a "force-placed" insurance policy with respect to the damages and losses that they themselves caused.

## CAUSES OF ACTION

### a. Agency

59. In April or May 2015, Wells Fargo issued a work order directing ServiceLink to facilitate debt collection and enforce the mortgage on the subject property through self-help by changing the locks, removing the Johnsons' personal property, and committing additional undertakings.

60. Wells Fargo had a consensual agency relationship with ServiceLink whereby Wells Fargo (as the principal) had the right to control and direct the activities of ServiceLink (as the agent), and ServiceLink had the authority to act on behalf of Wells Fargo.

61. Wells Fargo, as the principal of ServiceLink, is liable for the acts of ServiceLink related to its conduct surrounding the mortgage loan and subject property (hereinafter Wells Fargo and ServiceLink jointly referred to as "Defendants").

9

### b. **Willful Conduct**

62. Defendants maintain manuals, work order guidelines, and contractor guidelines that set forth the procedures for enforcing security instruments and performing property preservation services. Defendants' activities are subject to state and federal law and their own manuals that incorporate federal guidelines and state law.

63. The procedures maintained by Defendants include compensation for work preformed, such as changing of locks, winterization, and "removing internal debris." ServiceLink is compensated for each task preformed on behalf of Wells Fargo.

64. Defendants were fully aware that the subject property was listed for sale through a realtor because of the "for sale" sign in the yard (also publically available online), and that the property was fully-furnished, well-kept, occupied, and clearly not vacant or abandoned. Additionally, Kevin had informed Wells Fargo of his intent to sell the property.

65. Defendants never notified the Johnsons prior to entering the property, never had authorization or consent to enter the property, never sought nor obtained a court order granting them possession of the property, and never verified that the subject property was "abandoned."

66. Defendants were aware that their conduct violated state and federal law and did not adhere to their own guidelines with respect to the Johnsons and the subject property.

67. Defendants' conduct was designed to circumvent Illinois law, obtain an expedited intrusion into the Johnsons' property, obtain an expedited foreclosure sale for their own profit, bully the Johnsons from their property, and profit from the stolen personal property.

68. Additionally, the Johnsons were never served with any foreclosure complaint or summons with respect to the subject property at any time.

69. Defendants acted with conscious indifference to the Johnsons' rights, and their conduct was willful, intentional, and deliberate, and in clear violation of the Johnsons' basic property rights. Defendants' course of conduct demonstrates a deliberate intent to harm the Johnsons, deprive them of their property, and illegally "collect a debt."

    c. **Damages**

70. The Johnsons suffered damages proximately caused by Defendants' conduct, including:

      i. The loss of valuable and sentimental personal property;
     ii. Damage to real property;
    iii. Emotional distress, stress, anxiety, and pain and suffering;
    iv. Sleeplessness, physical sickness, and injury;
     v. Public humiliation and embarrassment;
    vi. Loss of time;
   vii. Being forced to give up on the short sale and file bankruptcy; and
  viii. Loss of credit worthiness.

### COUNT I – TRESPASS TO REAL PROPERTY AND CHATTELS
### (AGAINST WELLS FARGO AND SERVICELINK)

71. The Johnsons restate paragraphs 1 through 70 as if fully stated herein.

72. At all times relevant, Kevin owned the subject property and had a legal right to exclusive possession of the subject property along with his family.

73. Defendants knew that the Johnsons owned and occupied the subject property.

74. Without consent or a right to possession, Wells Fargo directed ServiceLink to forcibly enter and assume dominion and control of the subject property and change the locks.

75. Defendants unlawfully entered the subject property and assumed dominion and control over the Johnsons' personal property without consent and to the exclusion of their property rights. Defendants damaged the real property and stole or destroyed the personal property.

76. It is Defendants' normal business practice to ignore possessory and ownership rights of homeowners, and then illegally take possession of the property without consent, without a court order, and in conscious disregard of apparent facts establishing that the property is neither vacant nor abandoned.

77. Defendants' forced entry and trespass upon the subject property interfered with the Johnsons' possession, ownership, use, and enjoyment of the real and personal property.

78. Defendants' actions proximately caused the Johnsons damages described above, including those set forth in paragraph 70.

WHEREFORE, Plaintiffs KEVIN and BETINA JOHNSON respectfully request that this Honorable Court:

    a. Enter judgment in their favor and against Wells Fargo and ServiceLink;
    b. Award the Johnsons actual and punitive damages to be determined at trial;
    c. Award the Johnsons their reasonable attorney's fees and costs; and
    d. Award any other relief this Honorable Court deems equitable and just.

## COUNT II – CONVERSION
### (AGAINST WELLS FARGO AND SERVICELINK)

79. The Johnsons restate paragraphs 1 through 78 as if fully stated herein.

80. Defendants, without authority or consent, assumed control, dominion, or ownership over the Johnsons' personal property.

81. The Johnsons had an immediate, absolute, and unconditional right to possession of their personal property.

82. Defendants destroyed or remain in unlawful possession of the Johnsons' personal property.

83. The Johnsons demanded the return of their property from Defendants, or demand of the property would be useless because Defendants sold or otherwise disposed of the property.

84. Defendants have made no attempt to replace or return the Johnsons' property or offer to pay the equivalent monetary value.

85. Defendants actions proximately caused the Johnsons damages described above, including those set forth in paragraph 70.

WHEREFORE, Plaintiffs KEVIN and BETINA JOHNSON respectfully request that this Honorable Court:

    a. Enter judgment in their favor and against Wells Fargo and ServiceLink;
    b. Award the Johnsons actual and punitive damages to be determined at trial;
    c. Award the Johnsons their reasonable attorney's fees and costs; and
    d. Award any other relief this Honorable Court deems equitable and just.

### COUNT III –
### VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT
### (AGAINST WELLS FARGO AND SERVICELINK)

86. The Johnsons restate paragraphs 1 through 85 as if fully stated herein.

87. The Johnsons meets the ICFA definition of "consumer" and "person."

88. Defendants violated ICFA by employing unfair and deceptive acts and practices when dealing with the Johnsons.

89. Defendants specialize in mortgage lending, servicing, debt collection, property preservation, and the expedited turnover of property to satisfy a debt. These actions occurred in the course of conduct involving trade or commerce.

90. It was unfair for Defendants to dispossess the Johnsons of the subject property.

91. It was unfair for Defendants to dispossess the Johnsons of their personal property.

92. It was unfair for Defendants to lock the Johnsons out of their own property and force them to "give up" possession, including the personal property therein.

93. It was unfair for Defendants to steal and destroy the Johnsons' personal property.

94. These actions were carried out without a legal or factual basis. These actions violated the law, including the Illinois Mortgage Foreclosure Law ("IMFL") (defining possessory rights and the prohibition against harassing or intimidating occupants to abandon mortgaged property) and the Illinois Locksmith Act (requiring a license to change locks in Illinois).

95. It was unfair and deceptive for Defendants to employ self-help and take possession of the mortgaged real estate outside the judicial process mandated by state law.

96. Defendants' conduct offends public policy as it demonstrates an industry-wide practice of maximizing profits by ignoring the possessory rights of homeowners in violation of the law,

expediting the foreclosure process by circumventing the law, profiting from the expedited sale of the real property and stolen personal property, and profiting from false insurance claims.

97. Defendants' actions cause substantial injury to consumers generally because:

    i.   consumers reasonably expect to be safe and secure in their own property;

    ii.   consumers reasonably expect companies to communicate with them truthfully and accurately regarding the occupancy status of a home or any claims of vacancy or abandonment;

    iii.   consumers reasonably expect companies to follow state and federal law and their own guidelines;

    iv.   consumers reasonably expect that companies will not take illegal action to expedite a foreclosure and bully consumers from their property;

    v.   consumers reasonably expect companies to make honest efforts to resolve a dispute, instead of misrepresenting facts and ignoring requests and inquiries; and

    vi.   consumers reasonably expect large corporations to honor and respect laws designed to protect consumers.

98. Moreover, it was unfair and deceptive for Wells Fargo to direct and induce Johnson to stop making monthly mortgage payments in January 2013, make false representations regarding a loan modification, then illegally take possession of his property after inducing a default.

99. It can be inferred that after Wells Fargo induced Kevin to default on his loan, Wells Fargo intentionally strung Kevin through a loan modification process for over a year, cashed all of Kevin's "trial" payments for their own benefit, and required Kevin to submit and resubmit the same documents numerous times – only to deny receiving the documents – so Wells Fargo could place Kevin in a graver "default" position, take advantage of the Johnsons' financial vulnerability, and illegally take control of their property.

100. Kevin's inquiries and disputes regarding the loan modification and the illegal entry were never investigated nor adequately answered. The Johnsons could not avoid these immoral undertakings because Defendants would not accurately communicate with them, and simply refused to notify them of their intent to enter the subject property.

15

101. Defendants' conduct was so unethical and unending that the Johnsons had no choice but to submit, give up on the property, and for Kevin to file for bankruptcy. The Johnsons had no actual control over (a) the loan modification process, (b) the changing of the locks, (c) the taking and destroying of real and personal property, (d) what was done with the property (i.e. a forged check), or (e) their ability to enter the property after the locks were changed.

102. It was unfair and deceptive for Defendants to declare the subject property vacant and abandoned when it was obviously and conspicuously occupied and well-maintained.

103. It was unfair and deceptive for Defendants to intentionally break the law and circumvent the mandated state law foreclosure process, including the process to deem the property abandoned.

104. Defendants intended that the Johnsons would rely on their unfair and deceptive acts; their overall scheme was designed to thwart the Johnsons' attempts to keep their home or mitigate their damages through a short sale, and designed to buffalo the Johnsons into giving up their property without having to go through the foreclosure process.

105. Defendants were hoping that their illegal conduct would ultimately drive the Johnsons out of their property so Defendants could take possession without having to go through the potentially lengthy foreclosure process. Defendants would profit from an expedited sale of the subject property, the value from the stolen personal property, and the false insurance claim.

106. The Johnsons did rely upon Defendants' deceptive and unfair acts by defaulting on the loan at Wells Fargo's direction, giving up on the loan modification and short sale, canceling any attempts to sell the property, and inducing the Johnsons to move out of the property.

107. Kevin did rely upon Defendants' deceptive and unfair acts by filing for bankruptcy, because he felt as if he had no other option to protect himself from a deficiency.

108. This conduct is part of a pattern and practice of behavior in which Defendants routinely engage as part of their business model. It is Defendants' normal business practice to disregard the law, ignore the possessory and ownership rights of consumers, and profit from an expedited foreclosure sale of the real property, stolen personal property, and a false insurance claim.

109. Defendants' actions proximately caused the Johnsons damages described above, including those set forth in paragraph 70.

110. An award of punitive damages is appropriate because Defendants' conduct was outrageous, willful, wanton, showed a reckless disregard for the rights of the Johnsons, and was designed to take advantage of a vulnerable family.

WHEREFORE, Plaintiffs KEVIN and BETINA JOHNSON respectfully request that this Honorable Court:

    a. Enter judgment in their favor and against Wells Fargo and ServiceLink;
    b. Award the Johnsons their actual and punitive damages to be determined at trial;
    c. Award the Johnsons their reasonable attorney's fees and costs pursuant to 815 ILCS 505/10a(c); and
    d. Award any other relief this Honorable Court deems equitable and just.

### COUNT IV – NEGLIGENCE
### (AGAINST WELLS FARGO AND SERVICELINK)

111. The Johnsons restate paragraphs 1 through 110 as if stated herein.

112. Defendants voluntarily exercised control and dominion over the subject property and Johnsons' real property. Once a party voluntarily undertakes to perform a service, it must do so in a manner that does not increase the risk of harm to the person affected by the undertaking.

113. Defendants took affirmative steps to control access to and possession of the subject property by changing the locks, restricting access for a period of time, and exercising dominion and control over the personal property therein.

17

114. Defendants breached their duty to take reasonable steps to protect the Johnsons' property, comply with the law, or follow the practices and procedures within their own manuals and work order guidelines.

115. Defendants breached their duty by (a) failing to protect or secure the Johnsons' property, (b) violating the law, (c) failing to follow their own formalized procedures, and (d) failing to use reasonable care when "securing" the subject property.

116. Defendants breached their duty to act prudently by contributing to and enabling the destruction of the Johnsons' real and personal property and by failing to prevent any loss or destruction after voluntarily exercising control and dominion over the property.

117. It was reasonably foreseeable that unilaterally taking control and failing to take basic steps to protect the Johnsons' property violated the law and Defendants' own procedures.

118. It was reasonably foreseeable that taking dominion and control of the property and actively restricting the Johnsons' access to their property would damage the Johnsons.

119. Defendants were aware that their actions would likely result in injury to the Johnsons, but willfully ignored their duty of reasonable care. Defendants acted with such gross and willful negligence as to indicate willful and wanton disregard of the Johnsons' rights.

120. Defendants' actions proximately caused the Johnsons damages described above, including those set forth in paragraph 70.

WHEREFORE, Plaintiffs KEVIN and BETINA JOHNSON respectfully request that this Honorable Court:

    a. Enter judgment in their favor and against Wells Fargo and ServiceLink;
    b. Award the Johnsons actual and punitive damages to be determined at trial;
    c. Award the Johnsons their reasonable attorney's fees and costs; and
    d. Award any other relief this Honorable Court deems equitable and just.

**COUNT V – VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT**
**(AGAINST SERVICELINK)**

121. The Johnsons restate paragraphs 1 through 120 as if fully stated herein.

122. ServiceLink qualifies as a debt collector under FDCPA §1692a(6) because it uses instrumentalities of interstate commerce or the mails to collect debts and enforce security interests.

123. ServiceLink qualifies as a debt collector under FDCPA §1692a(6) because it acquired rights to the subject loan after it was in default.

124. ServiceLink regularly collects debts and enforces security interests.

125. ServiceLink is in the business of property preservation, changing locks, facilitating debt collection, and facilitating communications between borrowers and mortgage servicers.

126. ServiceLink acquired the authority from Wells Fargo to collect a consumer debt owed to Wells Fargo through Wells Fargo's security interest on the subject property.

   a. **Violation of §1692f(6)**

127. In an effort to collect a debt, ServiceLink violated §1692f(6) by taking illegal non-judicial action and employing self-help to dispossess the Johnsons of their property when ServiceLink had no present right to possession of the property through Wells Fargo's security interest.

128. ServiceLink took illegal non-judicial action by changing the locks and taking possession of the subject property to effectuate the dispossession and disablement of the Johnsons' real and personal property in violation of the IMFL governing foreclosures in Illinois.

129. ServiceLink's actions were preformed without any right to possession of the Johnsons' real or personal property, and without seeking or obtaining a court order granting it possession.

130. ServiceLink evicted and dispossessed the Johnsons from their home without reason and in violation of the law.

131. Additionally, ServiceLink is not licensed under the Illinois Locksmith Act, and therefore, is not legally permitted to change locks under Illinois law.

132. ServiceLink was tasked to perform services for Wells Fargo in order to make a profit for itself and to facilitate debt collection for Wells Fargo.

133. ServiceLink's actions proximately caused the Johnsons damages described above, including those set forth in paragraph 70.

WHEREFORE, Plaintiffs KEVIN and BETINA JOHNSON respectfully request that this Honorable Court:

    a. Enter judgment in their favor and against ServiceLink;
    b. Award the Johnsons statutory and actual damages to be determined at trial;
    c. Award the Johnsons costs and reasonable attorney's fees under 15 U.S.C. § 1692k; and
    d. Award any other relief as this Honorable Court deems equitable and just.

**THE JOHNSONS DEMAND TRIAL BY JURY ON ALL COUNTS**

February 9, 2016

    Respectfully submitted on behalf of:

    Plaintiffs Kevin & Betina Johnson,

    /s/ *Ross M. Zambon*
    Ross M. Zambon, #6294149
    Zambon Law, Ltd.
    Sulaiman Law Group, Ltd. (*of counsel*)
    Mara A. Baltabols, #6299033
    Sulaiman Law Group, Ltd.
    900 Jorie Blvd, Suite 150
    Oak Brook, IL 60523
    Phone: (630) 575-8181