UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KEVIN and BETINA JOHNSON; | ) | |
|                             Plaintiffs, | ) | |
| | ) | CIVIL ACTION |
| | ) | |
|                         v. | ) | Case No. 1:15-cv-10935 |
| WELLS FARGO BANK, N.A.; SERVICELINK, LLC; SERVICELINK FIELD SERVICES, LLC; TRUASSETS, LLC; UNITEC PROPERTY PROFESSIONALS; and WILLIAM BURCH; | ) ) ) ) ) ) ) | Honorable Virginia M. Kendall JURY TRIAL DEMANDED |
|                             Defendants. | ) | |

**PLAINTIFFS' MOTION TO COMPEL DISCOVERY RESPONSES FROM DEFENDANTS WELLS FARGO AND SERVICELINK PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 26 AND 37**

Plaintiffs Kevin and Betina Johnson ("Johnson") move this Court to compel discovery responses from Defendants Wells Fargo Bank, N.A. ("Wells Fargo") and Defendants ServiceLink, LLC & ServiceLink Field Services, LLC (collectively "ServiceLink") as follows:

**BACKGROUND**

1. On December 4, 2015, Johnson filed this lawsuit against Wells Fargo for violations of the FDCPA and ICFA, and common law claims for trespass, conversion, and negligence. [DKT #1.]

2. On July 12, 2016, Johnson filed a third amended complaint that also included defendants ServiceLink, TruAssets, LLC, Unitec Property Professionals, and William Burch. These parties are Wells Fargo's "property preservation" vendors (WellsFargo→ServiceLink→TruAssets→Burch d/b/a Unitec) that perform and facilitate "on the ground" preservation services on properties collateralized by Wells Fargo loans. [DKT #55 ¶¶12, 40, 62-65.]

3. Wells Fargo serviced Johnson's mortgage loan from 2010 through 2015. [*Id*. ¶¶14-15.]

4. The critical events in this lawsuit begin in 2013, with Johnson defaulting on his mortgage payments – at Wells Fargo's direction – with the promise of a loan modification. [*Id*. ¶¶22-32.]

1

5. Johnson later completed a three-month trial modification in August 2013 and was entitled to a permanent modification; Wells Fargo did not modify the loan as promised. [*Id.*]

6. After more than a year, Wells Fargo couldn't complete the relatively simple review that typically takes 30 to 90 days, continued to "lose" Johnson's documents, and forced Johnson to submit and resubmit the same financial information on a weekly or monthly basis. [*Id.*]

7. By mid 2014, Johnson had submitted to Wells Fargo's scheme, abandoned the modification, and informed Wells Fargo that he would list the property for a short sale. [*Id.* ¶33.]

8. In response, Wells Fargo, through its property vendors broke into Johnson's home, removed valuable and sentimental property, changed the locks, damaged the real estate, and withheld possession. [*Id.* ¶¶40-41.] This was carried out through an illegal "self-help" eviction without any judicial process or notice to Johnson. [*Id.* ¶¶41, 99-101.]

9. These events led to an inflated "default amount" on the mortgage loan, a damaged property, and ultimately a foreclosure against Johnson's home. [*Id.* ¶¶30, 70-72.]

10. Further, Johnson's personal and financial records were stolen, including his personal checkbook. Within a week of the break-in, a fraudulent check was drafted from Johnson's stolen checkbook for $2,500. [*Id.* ¶¶42-45.]

11. William Burch's deposition testimony from May 24, 2017 established that the fraudulent check drawn on Johnson's account was written to one of the same two men (Anderson) hired to enter Johnson's home in the name of "property preservation." Both had prior criminal records, which was known before they were hired. One of the two (Anderson) was Burch's brother.

**FACT DISCOVERY**

12. All parties exchanged Rule 26(a)(1) disclosures in April 2016, and ServiceLink provided amended disclosures in December 2016. *See attached* **Exhibit A**, Wells Fargo's Rule 26(a)(1) disclosures; **Exhibit B,** ServiceLink's amended Rule 26(a)(1) disclosures.

13. Wells Fargo did not identify any individuals with discoverable information; ServiceLink identified one employee.[1] Wells Fargo and ServiceLink ("Defendants") did not produce any documents for six months. *See* **Exhibits A & B**.

14. On August 23, 2016 and October 28, 2016, Johnson served requests to produce and interrogatories upon Wells Fargo and ServiceLink, respectively. *See attached* **Exhibit C**, Wells Fargo's request to produce responses; **Exhibit D,** Wells Fargo's interrogatory responses; **Exhibit E**, ServiceLink's requests to produce responses; **Exhibit F**, ServiceLink's interrogatory.[2]

15. Johnson specifically requested information relevant to, *inter alia*, the following:

   a. The contract between Wells Fargo and ServiceLink for the provision of property preservation. *See* **Exhibit C** ¶¶6, 25; **Exhibit D** ¶¶5,19; **Exhibit E** ¶11;
   b. Insurance coverage. *See* **Exhibit C** ¶31(m); **Exhibit E** ¶25(i);
   c. Individuals who interacted with Johnson or the subject property; **Exhibit D** ¶¶1-4; **Exhibit F** ¶1;
   d. Business records specific to Johnson's mortgage account (as to Wells Fargo). *See* **Exhibit C** ¶¶1-4, 13-14, 31; **Exhibit D** ¶¶1-4;
   e. Policies & procedures. *See* **Exhibit C** ¶¶10-12, 15-16, 27; **Exhibit D** ¶8; **Exhibit E** ¶¶8-10, 21, 15-16, 27; **Exhibit F** ¶¶7, 14-18; and
   f. Punitive damages discovery (pattern evidence and net worth). *See* **Exhibit C** ¶¶34-39; **Exhibit D** ¶¶13-19; **Exhibit E** ¶¶28-30; **Exhibit F** ¶¶18-19.

16. After two previous extensions, fact discovery is now set to close on July 28, 2017.

---

[1] ServiceLink disclosed a second person, Dana Miller, in its amended disclosures. *See* **Exhibit B**. However, Dana Miller is employee of "AFA Field Services, Inc.," an unrelated property preservation company that has nothing to do with the events in this case. *Id*.

[2] To limit the number of Exhibits, Johnson has attached Wells Fargo's and ServiceLink's operative responses to Johnson's discovery requests. These documents include and recite Johnson's individual requests and interrogatories.

**JOHNSON'S OUTSTANDING DISCOVERY**

17. On October 28, 2016, Johnson sent a letter to Defendants pointing to the excessive delays and the complete lack of production. *See attached* **Exhibit G**, Johnson's October 28, 2016 letter.

18. On December 20, 2016, Johnson was forced to file a motion to compel against Wells Fargo, having received no responses for, now, eight months. [DKT #92.]

19. On December 30, 2016 and January 14, 2017, Wells Fargo responded to the requests to produce and interrogatories, respectively. Wells Fargo's operative amended responses were served on March 9, 2017. *See* **Exhibit C & D**. On November 14, 2016 and January 5, 2017, ServiceLink responded to Johnson's requests to produce and interrogatories. *See* **Exhibit E & F**.

20. On February 14, 2017, Johnson sent both Wells Fargo and ServiceLink a letter, again outlining Johnson's concerns with the incomplete responses, the fact that documents were withheld without statements under Rule 34(b)(2)(C), and the concealment of individuals with relevant information. *See attached* **Exhibit H**, Johnson's letter to Wells Fargo; **Exhibit I**, Johnson's letter to ServiceLink. *See also* **Exhibit C** ¶¶1-4, 6, 10-14, 25, 31, 34-39; **Exhibit D** ¶¶1-4, 8, 13-19; **Exhibit E** ¶¶5, 8-10, 15-16, 19, 21, 27-30; **Exhibit F** ¶¶7, 11, 14-18.

21. Throughout discovery, Johnson's counsel had phone conferences, sent letters, and requested the information identified herein (see paragraph 15 above) numerous times. Johnson also addressed Defendants' improper objections and noncompliance with Rule 34(b)(2)(C).

22. Johnson's counsel (Zambon, Wooten) conferred with Wells Fargo's counsel (Snapper, Dohra) on January 7, February 24, and April 19, 2017 for more than two total hours.

23. Johnson's counsel (Zambon, Wooten) conferred with ServiceLink's counsel (Watkins, Lyman) on February 21, 2017 (45 minutes) and April 18, 2017 (one hour).

4

**FED. R. CIV. P. 37(a)(2) AND LOCAL RULE 37.2**

24. The undersigned certifies that he and his co-counsel made reasonable efforts to resolve the dispute, but those efforts have been unsuccessful. *See* Fed. R. Civ. P. 37(a)(2); LR 37.2.

25. After good faith consultation by telephone, these items remain unresolved. Defendants continue to withhold discoverable business records – some information is still being withheld more than a year after Rule 26(a)(1) was triggered, and with five weeks left for fact discovery.

26. Nothing in this motion is complicated. For instance, simply identifying witnesses or tendering the underlying contract takes little effort and does not warrant multiple discussions. Most of the disputes were addressed in every letter and phone conference (October 28, January 7, February 14, 21, & 24, and April 18 & 19, 2017). *See* **Exhibits H** & **I**.

## STANDARD

### A. <u>Rule 26 and Rule 37</u>

Rule 26(b)(1) permits discovery into any nonprivileged matter that is relevant to a party's claims or defenses. Rule 26(a)(1) requires, generally, that parties identify individuals with discoverable information and make available, by category, documents in their possession. Fed. R. Civ. P. 26(a)(1)(A)(i)-(ii). A motion to compel is appropriate where a party fails to respond or where their response is evasive or incomplete. Fed. R. Civ. P. 37(a)(2)-(3).

## ARGUMENT

The information at issue in this motion was specifically requested in Johnson's written discovery and has been the subject of many discovery conferences. These items address critical disputed facts, and some directly speak to the denials and positions taken by Defendants in this case; disclosure of these items is mandated by Rule 26(a)(1). After repeated opportunities, Defendants have failed to meet their obligation under Rules 26 and 37.

### A. Noncompliance with Rule 34(b)(2)(C) and Improper Objections

Defendants asserted boilerplate objections and incorporated a series of "general objections" in their responses (as for Wells Fargo, nearly every response). *See* **Exhibits C, D, & E**. *See Hodgdon v. Northwestern Univ.*, 245 F.R.D. 337, 340, n. 4 (N.D.Ill. 2007) (boilerplate objections insufficient under Rule 33(b)(1) and (4)); *see also Burkybile v. Mitsubishi Motors Corp.,* 2006 U.S. Dist. LEXIS 57892, at *20-21 (N.D. Ill. 2006) (citing cases).

"An objection must state whether any responsive materials are being withheld on the basis of that objection. An objection to part of a request must specify the part and permit inspection of the rest." Fed. R. Civ. 34(b)(2)(C).

As an example, fully explained in the following section, the underlying contract between Wells Fargo and Service Link, specific to property preservation, is clearly relevant and easy to provide at effectively no cost. *See* **Exhibit C** ¶¶6, 25; **Exhibit E** ¶¶5, 19; **Exhibit F** ¶11. Further, neither of the Defendant identified any documents as withheld under Rule 34 (b)(2)(C). *See* **Exhibits C, D, E, & F** *generally*.

The objections, without statements under Rule 34(b)(2)(C), make it impossible for Johnson to determine which of the many objections, if any, Defendants are actually relying upon. This leaves Johnson in the dark, having to first guess which objection might be legitimate, and then to guess at what responsive business records may exist. *Id.*

### B. Vendor Contracts

Defendants have denied the "agency" relationship amongst themselves in their answers, yet have not produced the underlying contract covering property preservation. [DKT #57 ¶¶62-66; DKT #58 ¶¶62-66.] *See* **Exhibit C** ¶¶6, 25; **Exhibit E**¶¶5, 19; **Exhibit F** ¶11. Johnson specifically requested this contract between Wells Fargo and ServiceLink. *Id.*

6

Defendants initially withheld this contract, only citing the need for a confidentiality order. *See* **Exhibit G**. Johnson's counsel agreed to the Northern District's form order, but Defendants did not seek a confidentiality order for four months. *Id*. After the confidentiality order was entered, Defendants withheld the contract for the last seven months. [DKT #76.] There is no justifiable basis to withhold this document.

The contracts are necessary to demonstrate control over the method, manner, and timing of property preservation services carried out by, or at the direction of, Defendants. This contract creates the relationship specific to the provision of property preservation services, including Defendants' instructions to its vendors, what duties were delegated, the manner of the control, and perhaps indemnity clauses. It will also speak directly to Defendants' own defensive position taken in this case – that Defendants' vendors were not acting as "agents" under Defendants' direction and control. [DKT #57 ¶¶62-66; DKT #58 ¶¶62-66.]

### C. Failure to Meet Burden for Objections

The burden rests upon the party opposing discovery to establish the basis for the objection. *See Jenkins v. White Castle Mgmt. Co.,* 2014 U.S. Dist. LEXIS 106100, at *6-*7 (N.D.Ill. 2014). Under the recent amendments to Rule 26, Magistrate Judge Jeffrey T. Gilbert explained the standard and the burden carried by the party objecting to a discovery request:

> [T]he mere fact that a party will be required to expend a considerable amount of time, effort, or expense in answering [a] discovery request[] is not a sufficient reason to preclude discovery." Although the cited case was decided before the recent amendments to the Federal Rules of Civil Procedure that explicitly mandated a proportionality analysis considering the benefits and burdens of particular discovery requests, CAI still must actually show that responding to Halvorsen's discovery would be unduly burdensome. To do so, CAI must 'adequately demonstrate the nature and extent of the claimed burden by making a specific showing . . . This showing typically requires affidavits or other evidence supporting a party's assertions of burden. A party objecting to a discovery request must, at a minimum, specify the nature and extent of that burden.

7

*Halvorsen v. Credit Adjustments Inc.*, 2016 U.S. Dist. LEXIS 48394, *4-*5 (N.D. Ill. 2016) (internal citations omitted). Here, Defendants have made no attempt to show the nature and extent of the claimed burden, let alone a specific showing, affidavits, or other certifications. *Id.*; **Exhibits C, D, E, & F**, *generally*.

A boilerplate "proportionality" or "overly burdensome" objection, without any showing of actual burden, difficulty, or cost is insufficient. *Id*. The conclusory representations of counsel are irrelevant, and the responses are absent any explanation as to what resources or efforts would be required to produce the information. *Id*. Moreover, with respect to items like the contract and insurance policies, a proportionality objection could not be asserted in good faith.

### D. Insurance Policies

Defendants have not produced their insurance policies. *See* **Exhibit A**; **Exhibit C** ¶31(m). ServiceLink did identify TruAssets' insurance policy (ServiceLink as additional insured), but did not produce its own policy. *See* **Exhibit B**; **Exhibit E** ¶25(i). Rule 26(a)(1) mandates the disclosure of "any insurance agreement under which an insurance business *may* be liable" to satisfy a possible judgment. Fed. R. Civ. 26(a)(1)(A)(iv)(emphasis added).[3]

### E. Failure to Disclose Witnesses

Despite Rule 26 mandates, Wells Fargo disclosed the identity of zero (0) persons with relevant knowledge. *See* **Exhibit A**; **Exhibit D** ¶¶1-4. ServiceLink disclosed one.[4] *See* **Exhibit B**; **Exhibit F** ¶1. Neither party bothered to disclose the identities of employees that appeared in Defendants' own document production, including employees specifically handling or discussing the Johnson break-in via email.

---

[3] Insurance policies must also be produced under the Mandatory Initial Discovery Pilot Program. *See* Northern District's Standing Order Regarding Initial Discovery Pilot Program ¶B6.

[4] And Dana Miller of AFA Field Services, Inc. *See* **Exhibit B** (and footnote 1 above).

**F. ICFA Unfairness – Consumer Harm**

Overall consumer harm is a factor for an ICFA unfairness claim. ICFA unfairness considers, "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers." *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 417-18 (2002). The court can then consider whether the injury is (a) substantial, (b) outweighed by any countervailing benefits to consumers or competition that the practice produces, and (c) one that consumers could not have reasonably avoided. *Siegel v. Shell Oil Co.,* 612 F.3d 932, 935 (7th Cir.2010).

Wells Fargo, as the servicer, and ServiceLink, as the "primary vendor," are responsible for ordering their local vendors to forcibly enter properties without obtaining a court order that authorizes a change in possession. Any unauthorized entrance into a consumer's home without a court order is illegal, a clear violation of public policy, oppressive, and in violation of Illinois law. *Bywater v. Wells Fargo Bank, N.A*., 2014 U.S. Dist. LEXIS 37925, at *11 (N.D.Ill. 2014).

Forcefully intruding upon a consumer's home under the guise of "property preservation" causes substantial injury to consumers and the public as a whole. The frequency in which Defendants unilaterally order their sub-vendors to enter a home – through the use of "self-help" outside of the mandated judicial process – cannot reasonably be avoided by the consumer. This falls squarely within the factors described in *Siegel*; any consumer subjected to these actions will suffer, at minimum, loss of access to their home, personal property removed from their home, the right to peaceable possession of their home, and some degree of emotional trauma. *Siegel*, 612 F.3d at 935. Many consumers will suffer all four of these common harms after experiencing or learning of the unauthorized intrusion into their home.

9

### G. Punitive Damages Discovery

Johnson's ICFA claim and the intentional torts against Defendants allow for punitive damages. 815 ILCS 505/10a(a)). *Oshana v. Coca-Cola*, 472 F.3d 506, 512 (7th Cir. 2006). *Motherway, Glenn & Nepleton v. Tehin*, 2003 U.S. Dist. LEXIS 10928, at *15 (N.D.Ill. 2003) (punitive damages recoverable for intentional torts). Johnson specifically requested – and Defendants withheld – punitive damages discovery (net worth, pattern evidence, similar conduct). *See* **Exhibits C, D, E, & F**.

Wells Fargo has not provided any information on instances of similar conduct. *See* **Exhibit C** ¶¶35-39; **Exhibit D** ¶¶13-19. ServiceLink has not provided any of its *own* records on similar conduct. **Exhibit E** ¶¶29-30; **Exhibit F** ¶¶18-19. Instead, ServiceLink performed an unsolicited PACER search for cases against *itself* in the Northern District. Regardless of any objections or claims regarding the number of similar consumer complaints, ServiceLink made no showing or explanation as to why it cannot respond or how it tracks this type of information. *Id*.

ServiceLink's arbitrary PACER search will only serve to prevent disclosure of the information necessary to determine the true overall consumer harm. This is more prejudicial to Johnson when taken in light of Defendants' own defense theory and their denials that self-help evictions implicate consumer protection concerns or have a consumer nexus. [DKT #57 ¶¶102-103, 114; #58 ¶¶102-103, 114.] Johnson is entitled to evidence of similar "lockouts" that were effectuated outside of the foreclosure process mandated by state law. *Id*.; *BMW v. Gore*, 517 U.S. 559, 576-78 (1996). *TXO Production Corp. v. Alliance Resources Corp.,* 509 U.S. 443, 462, and n. 28 (1993) (characterizing as "well-settled" the admissibility of alleged wrongdoing in other parts of the country). Defendants cannot continue to take factual positions and deny allegations, and then withhold the information necessary to resolve the factual dispute. [*Id*.]

10

Moreover, routine use of self-help through specific orders to "lockout" consumers also constitutes classic habit evidence under FRE 406. *Twyman v. S&M Auto Brokers*, 2016 U.S. Dist. LEXIS 144236, at *16 (N.D.Ill. Oct. 18, 2016) (citing FRE 406) (Hon. Virginia Kendall) ("The information sought by Plaintiff from the IAG is relevant to the current dispute, especially because it could assist Plaintiff to establish that Defendants engaged in a pattern and practice of misrepresenting and concealing the fact that vehicles for sale had been in collisions.").

No information on net worth was provided by either Defendant. *See* **Exhibit C** ¶34, **Exhibit E** ¶28. *Challenge Aspen v. King World Prods. Corp.*, 2001 U.S. Dist. LEXIS 18357, at *10 (N.D Ill. 2001) ("[T]here can be no doubt that net worth is discoverable under Rule 26(b)(1) of the Federal Rules of Civil Procedure, as it regards...plaintiff's punitive damages.").

### H. Mortgage Loan Records (Wells Fargo only)

Wells Fargo did not produce the following documents for even the most critical time period (May 2013 to May 2014) surrounding Johnson's mortgage account and loan modification:

a. a complete or consolidated notes log (produced notes log was from only loss mitigation);
b. phone calls with Johnson, including a call log and phone recordings;
c. mortgage statements;
d. internal emails; and
e. policies and procedures regarding servicing and loan modifications.

*See* **Exhibit C** ¶31.

Wells Fargo has not produced an "inventory of images," a retrievable document from Wells Fargo's system of record that would list all documents related to Johnson's loan account. These documents are readily available to Wells Fargo and can be produced at no cost.

**I. Privilege Log (Wells Fargo only)**

Wells Fargo raised privilege objections through out its responses, but produced no privilege log. *See* **Exhibits C, D, & H**. The continued noncompliance with Rule 26(b)(5) after repeated opportunities should result in a complete privilege waiver. *MSTG, Inc. v. AT&T Mobility LLC*, 2011 U.S. Dist. LEXIS 5533, at *32 (N.D.Ill. 2011) ("This Court has expressed its willingness in the past to find a waiver of privilege claims when a party has not complied fully with Rule 26(b)(5).") Moreover, loan-related documents prepared at regular intervals would not be privileged, as they constitute non-confidential records prepared in the regular course of business. *RBS Cit., N.A. v. Husain*, 291 F.R.D. 209, 220 (N.D.Ill. 2013) (Hon. Castillo).

### REQUEST FOR RELIEF

A party who fails to disclose as required by Rule 26(a) or provides false information without "substantial justification" may be sanctioned unless such failure is "harmless." *Musser v. Gentiva Health Serv.,* 356 F.3d 751, 755 (7th Cir.2004) (citing Fed. R. Civ. P. 37(c)(1)). "Where a party has received adequate notice and fails to comply with discovery proceedings set to occur by a specific date, a court may impose sanctions without a formal motion to compel the discovery." *Tamari v. Bache & Co.*, 729 F.2d 469, 472 (7th Cir. 1984). *See also Fautek v. Montgomery Ward & Co.*, 96 F.R.D. 141, 145 n.5 (N.D. Ill. 1982) (dilatory and partial compliance with discovery requests is actionable under Rule 37(d)).

Here, the delay is not harmless. Johnson was forced to bring this motion, with the twice-continued discovery deadline set to close in five weeks. And this is the second motion to compel against Wells Fargo in this case. Johnson's counsel previously accommodated several requested extensions in good faith, only to be met later, and again much later, with needless delays and further dilatory tactics. The refusal to produce at least some of the information is entirely

indefensible, including (a) the basic vendor contract for property preservation, (b) insurance policies, and (c) pattern or net worth evidence. With respect to Wells Fargo, this also includes standard servicing records and privilege claims with no privilege log.

Being stonewalled for the last a half year has left Johnson without a full and fair opportunity to examine Defendants; Defendants should not be rewarded for gaming the system or intentionally thwarting discovery. Johnson requests an order (a) compelling the information specifically requested herein, (b) declaring waived or the striking of all objections, and (c) any appropriate sanctions. *See Autotech Techs., Ltd. P'ship v. AutomationDirect.Com, Inc.*, 236 F.R.D. 396, 398 (N.D.Ill. 2006).

WHEREFORE, Kevin and Betina Johnson pray for an order compelling the discovery set forth in this motion, any appropriate sanctions, and any other just relief.

Respectfully Submitted,

/s/ *Ross M. Zambon*
Ross M. Zambon, #6294149
Zambon Law, Ltd.
Sulaiman Law Group (*of counsel*)
Mara A. Baltabols, #6299033
Sulaiman Law Group, Ltd.
900 Jorie Blvd, Ste 150
Oak Brook, IL 60523