IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KEVIN and BETTINA JOHNSON, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 15 C 10935 |
| v. | ) | |
| | ) | Magistrate Judge |
| WELLS FARGO BANK, N.A.; | ) | Maria Valdez |
| SERVICELINK FIELD | ) | |
| SERVICES, LLC.; TRUASSETS, | ) | |
| LLC.; UNITEC PROPERTY | ) | |
| PROFESSIONALS; and WILLIAM | ) | |
| BURCH, | ) | |
| | | |
| Defendants. | | |

### ORDER

Before the Court is Plaintiffs' Motion to Compel Discovery Responses from Defendant Wells Fargo and ServiceLink Pursuant to Federal Rules of Civil Procedure 26 and 37. [Doc. No. 114]. Wells Fargo Bank, N.A. ("Wells Fargo"), and ServiceLink Field Services, LLC. and ServiceLink, LLC., (collectively "ServiceLink") have filed separate responses. The motion was argued before the Court on July 12, 2017. For the reasons set forth below, Plaintiffs' motion is granted in part and denied in part.

### BACKGROUND

As the parties are familiar with this case, the Court will only recite the facts necessary to resolve this motion. The crux of this discovery dispute is whether Wells

1

Fargo and ServiceLink have adequately responded to four categories of materials[1] originally requested in Plaintiffs' August 23, 2016 Requests to Produce and October 28, 2016 Interrogatories. These categories of materials sought information relevant to:

1. Individuals who interacted with [Plaintiff] or the subject property. [Doc. No. 114, Ex. D., *Wells Fargo Am. Resp. and Obj. to Pls.' First Set Interrog.*, ¶¶1-4; Ex. F., *ServiceLink Am. Resp. and Obj. to Pls.' First Set Interrog.*, ¶1];

2. Business records specific to [Plaintiffs'] mortgage account (as to Wells Fargo). [Doc. No. 114, Ex. C., *Wells Fargo Am. Obj. and Resp to Pls.' First Req. to Produc.,* ¶¶1-4, 13-14, 31; Ex. D., ¶¶1-4;

3. Policies & procedures. [Ex. C., ¶¶10-12, 15-16, 27; Ex. D., ¶8; Ex. E., *SeviceLink Resp. to Pls.' First Req. to Produc.*, ¶¶8-10, 21, 15-16, 27; Ex. F., ¶¶7, 14-18]; and

4. Punitive damages discovery (pattern evidence and net worth). [Ex. C., ¶34-39; Ex. D., ¶¶13-19; Ex. E., ¶¶28-30; Exhibit F., ¶¶18-19.

Wells Fargo objected to categories 1-3 on multiple grounds, largely complaining that Plaintiffs' discovery requests were facially overbroad and disproportionate to the needs of the case. Wells Fargo raised these same objections to category 4, as well as stating punitive damages discovery was irrelevant. Subject to its objections and pursuant to Federal Rule of Civil Procedure ("Rule") 33(d), Wells Fargo stated certain subsets of the documents labeled as Bates Nos. WF-JOHNSON-0000001-0001153 are responsive to these categories of materials, and were provided to Plaintiffs on December 30, 2016.

---

[1] Since the filing of this motion, the parties resolved the dispute concerning two additional categories of documents that were originally sought in Plaintiffs' motion: (1) the contract between Wells Fargo and ServiceLink for property preservation services; and (2) any insurance coverage related to the instant litigation.

While the Court will examine the defendants' objections to these categories of materials in turn, the Court is compelled to remind the parties of their obligations under this Court's Standing Order, and Local Rule 37.2. This Court's Standing Order requires the parties *timely communicate* in making efforts to resolve this discovery dispute. Similarly, Local Rule 37.2 requires counsel to attempt to resolve discovery disputes in good faith prior to the filing of any motion. *See generally* L. R. Civ. P. 37.2.

It is clear that the Court's Standing Order and Local Rule 37.2 have not been followed by the letter, or in spirit. Plaintiffs' counsel state in their motion that the last attempt to resolve this discovery dispute occurred nearly two months prior to the filing of this motion, on April 19, 2017; and many months since the initial dispute. As a result, the Court is now forced to craft an expedient remedy in light of this case's July 28, 2017 fact discovery cutoff. This discovery dispute concerns fifty individual requests for production, interrogatories, and the responses thereto. Forcing the Court to distill this volume of information in a short amount of time prevents the parties from obtaining the nuanced and suitable resolution the parties could have reached had they undergone their duty to timely resolve this conflict in the two months prior to this motion. Courts ought not to reward those who needlessly allow confusion to persist or who are the cause of discovery delays. *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 331, 342 (N.D. Ill. 2005).

Lawyers have a duty to act in good faith in complying with their discovery obligations and to cooperate with and facilitate forthright discovery. *Johnson v. J.B.*

*Hunt Transport, Inc.,* 280 F.3d 1125, 1132 (7th Cir. 2002). The Court questions the parties' good faith efforts to resolve these disputes before filing the motion, as the dispute concerning two of the six categories of materials originally sought in Plaintiffs' motion have already been resolved without issue. Further, as discussed more fully below, many aspects of the remaining discovery requests are more than resolvable without court intervention.

Finally, while the parties have explained which materials are at issue; no party has adequately explained the contents of the documents that Wells Fargo has already tendered to Plaintiffs, notably WF-JOHNSON-0000001-0001153, and the recently-produced WF-JOHNSON-0001154-0002047. Wells Fargo named these documents as the "loan service note," duplicate "servicing records" and 49 previously undisclosed mortgage statements sent to Plaintiffs. However, while "servicing notes, records, and mortgage statements" are the titles of documents ostensibly containing the individual types of information sought in most of Plaintiffs' discovery requests; the Court is unaware of whether those documents actually contain the particular types of information sought in Plaintiffs' requests. The Court therefore has no idea whether those broad and overarching categories of documents are fully responsive to Plaintiffs' requests. Plaintiffs' moving papers and oral argument likewise fail to illuminate the Court of how these produced documents are unresponsive to Plaintiffs' requests.

4

## ANALYSIS

Under Rule 37(a), when a party does not respond properly to a discovery request, the party that issued the request may file a motion to compel a proper response. *Baxter Int'l, Inc. v. AXA Versicherung*, No. 11 C 9131, 2017 WL 1205071, at *2 (N.D. Ill. Mar. 30, 2017) (citing Fed. R. Civ. P. 37(a)) (internal citation omitted). The court then must independently determine the proper course of discovery. *Id.* (citation omitted). District courts have broad discretion in controlling the course of discovery. *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998); *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002).

The Federal Rules of Civil Procedure provide for the discovery of relevant non-privileged material. *Schaap v. Exec. Indus., Inc.*, 130 F.R.D. 384, 386 (N.D. Ill. 1990) (citing Fed. R. Civ. P. 26(b)(1)). The relevancy of discovery material "is to be more loosely construed at the discovery stage than at the trial." *Id.* Specifically, relevant information includes any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case. *Grayson v. City of Aurora*, No. 13 C 1705, 2013 WL 6697769, at *2 (N.D. Ill. Dec. 19, 2013) (citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350–52 (1978)).

However, although construed liberally, relevant discovery has its limits. *United States v. Navistar Int'l Corp.*, No. 15 C 6143, 2017 WL 746832, at *3 (N.D. Ill. Feb. 22, 2017) (citing Fed. R. Civ. P. 26(b)). The discovery must be proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant

information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b). Ultimately, the party objecting to discovery bears the burden to show the requested discovery is improper. *Baxter*, 2017 WL 1205071 at *2.

### 1. Individuals who interacted with Plaintiffs on the Subject Property

Wells Fargo argues that the first category of information is facially overbroad and disproportionate to the needs of the litigation. Wells Fargo further represents that the materials identified as Bates Nos. WF-JOHNSON-0000001-0001153, produced in Interrogatory Responses Nos. 3 and 4, and in accordance with Rule 33(d), include Wells Fargo's "loan service note" for Plaintiffs' mortgage on the subject property, and are responsive to Plaintiffs' Interrogatories Nos. 1-4. As mentioned above, Plaintiffs have not indicated whether these materials are unresponsive to Plaintiffs' requests. Therefore, Wells Fargo shall supplement its Interrogatory Responses Nos. 1 and 2 by certifying the documents produced in Interrogatory Responses Nos. 3 and 4 are also fully responsive to Plaintiffs' Interrogatories Nos. 1 and 2, and that the produced-documents represent the full extent of responsive documents in Wells Fargo's control. Wells Fargo shall further provide the identities of the Wells Fargo personnel identified by alphanumerical ID among the produced documents.

ServiceLink represents that it has completed its required disclosures because their disclosed witness, Mr. Joeseph Iafelice, the Vice President of Claims and Disputes Resolution for ServiceLink Field Services, LLC, is the only person from either ServiceLink defendant who may have knowledge connected to the alleged break-in. They further represent that the investigation and communications regarding the break-in was handled by ServiceLink's in-house counsel and is therefore privileged from disclosure. The Court is comfortable with ServiceLink's representations.

While Plaintiffs' Complaint alleges that after the break-in, a notice was posted on Plaintiffs' property instructing Plaintiffs to contact Wells Fargo or ServiceLink, the Complaint states Plaintiffs chose only to communicate with Wells Fargo regarding the alleged break-in. Similarly, Plaintiffs have not provided the Court any evidence that other persons have been wrongly omitted from this disclosure. The Court is therefore satisfied with ServiceLink's production.

**2. Business records specific to Plaintiffs' mortgage account (as to Wells Fargo).**

Wells Fargo represents that the produced materials identified as Bates Nos. WF-JOHNSON-0000001-0001153, three sets of duplicate "servicing records," and 49 previously undisclosed mortgage statements sent to Plaintiffs, corresponding to Bates Nos. WF-JOHNSON-0001154-0002047, were offered in response to Plaintiffs Interrogatory Requests Nos. 1-4, and Plaintiffs' Request for Productions 1-4, 13-14, and 31. Wells Fargo also represented it shall continue searching for an ostensibly responsive "consolidated notes log" during the relevant time period.

7

Plaintiffs have not stated whether these records are unresponsive to their discovery requests. Therefore, Wells Fargo shall supplement its Responses to Interrogatories and Responses to Requests for Production to certify these newly produced materials contain the information that is fully responsive to Plaintiffs' requests, and these materials comprise the entirety of documents containing responsive information.

### 3. Policies & Procedures, Pattern & Practice, and Net Worth Evidence ("Punitive Damages")

Although Plaintiff considered Wells Fargo's policies and procedures a separate category of material; it falls under the banner of Plaintiffs' requested "punitive damages" evidence, which also includes pattern and practice evidence, and the net worth of the defendants. Plaintiffs claim punitive damages evidence is relevant to determine a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"). To prove a violation of ICFA, a plaintiff need only show an unfair practice any one of three ways, namely: "(i) whether the practice offends public policy; (ii) whether it is immoral, unethical, oppressive, or unscrupulous; [or] (iii) whether it causes substantial injury to consumers." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 934 (7th Cir. 2010). To constitute a substantial injury, the injury must be "(i) substantial; (ii) not be outweighed by any countervailing benefits to consumers or competition that the practice produces; and (iii) be an injury that consumers themselves could not reasonably have avoided." *Id.*

8

### a. Policies and Procedures

After a review of the specific materials requested by Plaintiffs, the Court agrees conceptually Wells Fargo's policies and procedures concerning topics such as the servicing of mortgage loans, determining the vacancy status of serviced properties, and the preservation process for serviced properties are relevant to establishing a violation of ICFA. While Wells Fargo's reliance on the Illinois Supreme Court's draft opinion from *Schweihs v. Chase Home Fin., LLC* 2016 IL 120041, *Schweihs* does not *per se* foreclose punitive damages discovery. However, the Court agrees with Wells Fargo that the manner in which Plaintiffs' requests seek this evidence is overbroad. Notably, Plaintiffs are only entitled to the requested policies and procedures to the extent they were used to make any determinations about Plaintiffs' property in this litigation.

Wells Fargo also represents that produced materials, including the "Property Preservation Manual," provided by ServiceLink, the materials identified as Bates Nos. WF-JOHNSON-0000001-0001153, and Wells Fargo's copy of the "Property Preservation Manual," identified in Bates Nos. WF-JOHNSON-0001404-0002047, are also responsive to these requests. It is again unclear whether these records are unresponsive to Plaintiffs' discovery requests. Therefore, Wells Fargo shall supplement its Responses to Interrogatories and Responses to Requests for Production to certify these materials contain the type of information fully responsive to Plaintiffs' requests, and these materials comprise the entirety of documents containing responsive information, regardless of any substantive overlap

between these documents and the responsive documents in ServiceLink's possession.

### b. Pattern and Practice Evidence

Similarly, Plaintiffs request evidence of similar "bad faith conduct" which they claim bears on the issue of punitive damages. Wells Fargo objects to the requests claiming the scope of conduct sought is overbroad and production thereof would cause Wells Fargo undue burden. Wells Fargo's argument contains no affidavits or evidence of their ability to undertake a search for these materials, how long the search for these materials might take, and what the cost of production might be. Wells Fargo has therefore minimally articulated its overbreadth and undue burden objections to these requests. *See Schaap,* 130 F.R.D. at 387 (rejecting generic, non-specific, unsupported undue burden and overbreadth objections).

However the Court believes the Plaintiffs' Interrogatory Requests Nos. 13-19 are nonetheless facially overbroad because they request such requests seek information not directly relevant to the instant lawsuit. Therefore, Wells Fargo need only produce the information requested in Interrogatory Requests Nos. 13-19 and Request to Produce Nos. 35-39 to the extent that information is related to the issue, claims, or defenses in this particular case. ServiceLink also represented in Court that a production of final judgments made on July 11, 2017 has successfully resolved their portion of the dispute and Plaintiffs do not counter this. Therefore, the Court finds ServiceLink has satisfied their obligation to produce.

### c. Net Worth Evidence

Because the Plaintiffs are seeking punitive damages under Illinois law, it is clear that some net worth evidence supporting the punitive damages award contemplated by ICFA, and as requested in Plaintiffs' Request for Production No. 34, will be relevant as to all defendants at some point in the litigation. *See Challenge Aspen v. King World Prods. Corp.*, No. 00 C 6868, 2001 WL 1403001, at *3 (N.D. Ill. Nov. 9, 2001) (finding evidence of net worth is admissible in a trial where punitive damages are at issue). However, the Seventh Circuit has interpreted Illinois law to "[dis]favor punitive damages and [to] insist that [the] plaintiffs ... establish not only simple fraud but gross fraud, breach of trust, or other extraordinary or exceptional circumstances clearly showing malice or willfulness." *Roboserve, Inc. v. Kato Kagaku Co.*, 78 F.3d 266, 275 (7th Cir.1996)

As net worth is simply a figure; the Court believes the manner in which Plaintiffs have requested net worth evidence is entirely overbroad. The Court cannot conceive why "all documents" relating to the defendants' current net worth are required to prove a relatively simple number begging for stipulation. *See Novak v. Pearlstein*, No. 13-CV-8861, 2016 WL 3586899, at *3 (N.D. Ill. June 24, 2016) ("Only defendants' current assets and liabilities are relevant to the punitive damages claim against them."). The parties shall stipulate to a net worth value for defendants.

11

### 4. Call Logs and Internal Emails

Call logs and internal emails regarding the Plaintiffs' claims for the time periods referenced in Plaintiffs' Request to Produce No. 31 are relevant, and Wells Fargo has not met its burden of showing the production of same would be unduly burdensome. However, after an examination of the record, and according to Wells Fargo's representations, it appears likely that information responsive to this Request may have already been tendered to Plaintiffs in Wells Fargo's prior production. Therefore, Wells Fargo shall supplement its production; or certify that the materials already produced by Wells Fargo contain the information sought in this request; or certify that after the search has for the requested information has concluded, no such information could be found.

## CONCLUSION

For the aforementioned reasons, Plaintiffs' Motion to Compel Discovery Responses from Defendant Wells Fargo and ServiceLink Pursuant to Federal Rules of Civil Procedure 26 and 37 [Doc. No. 114] is granted in part and denied in part.

**SO ORDERED.**                  **ENTERED:**

**DATE:** __July  14 , 2017__        _____
                                                             **HON. MARIA VALDEZ**
                                                             **United States Magistrate Judge**