UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KEVIN and BETINA JOHNSON; | ) | |
|                         Plaintiffs, | ) | |
| | ) | CIVIL ACTION |
| | ) | |
|                         v. | ) | Case No. 1:15-cv-10935 |
| WELLS FARGO BANK, N.A.; SERVICELINK, LLC; SERVICELINK FIELD SERVICES, LLC; TRUASSETS, LLC; UNITEC PROPERTY PROFESSIONALS; and WILLIAM BURCH; | ) ) ) ) ) ) | Honorable Virginia M. Kendall  JURY TRIAL DEMANDED |
|                         Defendants. | ) | |

**PLAINTIFFS' RENEWED MOTION TO COMPEL DISCOVERY RESPONSES AND FOR SANCTIONS AGAINST WELLS FARGO PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 26 AND 37**

Plaintiffs Kevin and Betina Johnson ("Johnson") file this renewed motion to compel discovery responses and for sanctions against Defendants Wells Fargo Bank, N.A. ("Wells Fargo") follows:

### INTRODUCTION

Johnson's allegations cover complaints surrounding the handling of a loan modification (covering most of 2014) and a "self-help" eviction in May 2015, whereby Wells Fargo's "property preservation" vendors (WellsFargo→ServiceLink→TruAssets→ Burch d/b/a Unitec) broke into Johnson's home, removed property, changed the locks, and withheld possession. [DKT #55. ¶¶22-33, 40-45, 70-72, 99-101.]

With respect to the lockout, Wells Fargo has taken the position that Burch was a rogue operator, Wells Fargo had no knowledge of Burch's activities and did not approve of Burch's conduct. This factual position underpins Wells Fargo's defense of this claim as to the lockout and taking of the personal property.

1

At Wells Fargo's 30(b)(6) deposition, facts came to light indicating that Wells Fargo's legal department had controlled all investigation of the lawsuit, all documents produced and the materials the corporate representative considered when preparing to testify. While this practice may not in and of itself be improper, the manner in which it has been employed in this case demonstrates that Wells Fargo's legal department made a calculated choice not to comply with discovery in this matter, not to properly investigate the case, including failing to adequately respond to discovery, intentionally withholding relevant information, failing to adequately prepare its corporate representative, failing to provide its corporate representative relevant materials and generally stonewalling discovery and this litigation through continued efforts at obfuscation and delay that began at the outset of the case and has continued through today.

## BACKGROUND

1. This is the third motion to compel filed against Wells Fargo in this matter.

2. The first was filed on December 20, 2016, where Johnson explained Wells Fargo's failure to timely respond to written discovery. [DKT #92.] Wells Fargo had produced 0 documents and identified 0 individuals for eight months. [*Id.*]

3. On June 21, 2017, Johnson filed a second motion to compel against Wells Fargo, setting forth the prior history of discovery abuse by Wells Fargo covering 18 months and through several extensions to the discovery deadline.[1] [DKT #114.]

4. Wells Fargo filed a response brief, falsely asserting that (at least some of) the requested documents had been produced, claiming an ongoing search for the consolidated notes log, and relied on "undue burden" and "proportionality" and "overly broad" (and so on) objections, all with a straight face. [DKT #121.]

---

[1] To limit the length of this motion, Johnson requests that the Court incorporate herein Johnson's previous motion to compel.

5. On July 14, 2017, the Court entered an order granting in part and denying in part Johnson's second motion to compel. [DKT #126.] The Court ordered Wells Fargo to:

   a. certify the responses to Interrogatories Nos. 1 & 2. [DKT #126 p. 6.]
   b. provide the identities of the Wells Fargo personnel identified by alpha numerical ID among the produced documents. [DKT #126 p. 6.]
   c. supplement and certify the responses regarding the mortgage servicing records, including the "consolidated notes log." [DKT #126 p. 6.]
   d. produce policies and procedures for mortgage servicing with a certification. [DKT #126 pp. 9-10.]
   e. produce pattern evidence materials related to the issues, claims, and defenses in this litigation. [DKT #126 p. 10.]
   f. produce the call logs and internal emails or certify the search that was conducted for these materials. [DKT #126 p. 12.]

6. On July 18, 2017, Johnson's counsel requested compliance with the Court's order before the Rule 30(b)(6) deposition of Wells Fargo on July 21, 2017. No assurances, let alone any additional materials or certifications, were provided.

7. On July 21, 2017, prior to commencing the deposition, Johnsons' counsel asked if Wells Fargo had any of the additional materials. Wells Fargo's counsel replied in the negative.

8. Through the filing of this motion, Wells Fargo still has not complied with any of its obligations set forth in the July 14, 2017 order. [DKT #126.] Specifically, Wells Fargo has failed to (a) identify any individuals or personnel, (b) produce the consolidated notes log, policies and procedures (loss mitigation), pattern evidence, or (c) certify any of the responses as ordered. Wells Fargo has produced a limited number of emails but has not certified that the emails produced are all of the relevant emails or made any effort to explain its search efforts for these emails.

### A. Wells Fargo's Sworn Rule 30(b)(6) Testimony on July 21, 2017

9. On July 21, 2017, Johnson proceeded with the Rule 30(b)(6) deposition of Wells Fargo's corporate representative.

3

10. Despite the representations made in Wells Fargo's response brief and in open court, Wells Fargo's testimony confirmed that many of the documents subject to Johnson's discovery requests are, in fact, readily available and part of Wells Fargo's system of record, and not difficult or expensive to produce. For instance, with respect to the consolidated notes log, Wells Fargo testified:

   a. Wells Fargo chose to produce only six months of the consolidated notes log for a time period (October 2015 to January 2016) entirely *after* the relevant events at issue in this case.
   b. Wells Fargo did not produce a consolidated notes log for the most critical time period in the case (January 2014 to May 2015) or for the life of the loan.
   c. Wells Fargo's corporate representative could not explain why Wells Fargo's *Legal Department* did not produce the entire consolidated notes log for Johnson's account, or at least the unarchived portion of the consolidated notes log.

11. Wells Fargo's representative could not explain the rhyme or reason to the documents that were produced versus those withheld. Wells Fargo representative testified that Wells Fargo's Legal Department controlled the responses to discovery, and that no efforts had been undertaken by anyone at Wells Fargo other than the Legal Department to review and respond to discovery.

12. Further, Wells Fargo representative was admittedly not prepared to testify on a number of critical areas and topics most critical to this litigation. Wells Fargo representative testified that she only reviewed the materials once, as determined by Wells Fargo's Legal Department, and did not attempt to make any independent efforts to prepare to testify regarding the matters raised in the deposition notice, even when the information was readily available to the professional witness.

13. Wells Fargo representative could not provide the identity of individuals (or even departments) who could provide testimony on the subject matter and topics "unknown" to her.

14. For what it's worth, Wells Fargo representative had not even reviewed the critical photographs taken at the subject property during and after the break-in by its own vendors.

4

### B. Post-Deposition Document Dump

15. On August 2, 2017, Wells Fargo produced 868 pages of additional documents – after 18 months – and after the Rule 30(b)(6) deposition.

16. The 868 pages were simply "dumped" on Johnsons' counsel without any explanation as to what discovery requests the documents were responsive to, why the materials were produced, or even what the materials allegedly were. This pattern of "dumping" documents has now occurred a third time in this case, all in contravention of the Rules of Procedure.

17. Moreover, a majority of the production (721 pages) are materials from "sub-screens" and comments fields in Wells Fargo's system of record. These records are not the records from the actual departments involved in making the records, instead they are portions of records from various departments, some of which may be complete and some of which may not even be included in the consolidated notes log. It seems to Johnson's counsel that production of these documents amounted to nothing more than an effort by Wells Fargo to avoid its obligation to comply with Johnson's discovery requests and fill the case with more smoke screens and waste more time. Most of these documents are functionally useless to either party for the purpose of this litigation. Certainly by the end of discovery Johnson would believe that Wells Fargo would have some idea of what documents were actually relevant to the claims in this matter.

18. Only 104 pages of the 868 pages produced were actually identifiable as responsive in some form to the Johnsons' discovery requests. This consisted primarily of a call log and the few emails produced mentioned earlier. Many of those emails were already produced by other parties to this litigation so Johnson cannot say that they actually represent the efforts of Wells Fargo to comply with this Court's July 14, 2017 Order.

5

**COMPLIANCE WITH FED. R. CIV. P. 37(A)(2) AND LOCAL RULE 37.2**

19. Since the Court's July 14, 2017 order and July 21, 2017 deposition, Johnson's counsel has made numerous efforts to resolve ongoing discovery issues with Wells Fargo.

20. Wells Fargo has avoided any efforts to actually meet and confer regarding this matter. In fact, Wells Fargo's counsel has never once committed to being available to confer regarding these deficiencies, in the face of repeated requests from Johnson's counsel, and has offered no explanation for the continued delays and abuses of the discovery process.

21. Counsel for the Johnsons has also attempted to reach Wells Fargo's counsel by phone but their calls have not been answered or returned during this period of time.

22. Specific, documented efforts to comply with Rule 37(A)(2) and Local Rule 37.2 are as follows:

   a. On July 24, 2015, Johnson's counsel (Wooten) called and left a message for Wells Fargo's counsel (Snapper). Johnson's counsel sent a detailed email addressing Wells Fargo's (a) failure to comply with the Court's Order of July 14, (b) the fact that Wells Fargo's Legal Department had taken total control of the investigation and discovery responses and apparently eliminated actual departments and employees who would have discoverable knowledge; (c) failure to produce specific documents.

   b. On July 25, 2017, Johnson's counsel (Zambon), sent a follow-up email to Wells Fargo's counsel requesting a prompt response and a discovery conference "either today or tomorrow."

   c. On July 26, 2017, Wells Fargo responded by email, "We're preparing a supplemental document production for this week. Let's discuss once you've had a chance to review." Wells Fargo did not return the phone call.

    d. On July 27, 2017, Johnson's counsel (Wooten) sent an email to Wells Fargo's counsel:

> Obviously there are a number of issues to discuss after last week's deposition. I would prefer to discuss them immediately and without waiting on the supplementation so that we can at least try to reach an understanding. I'm sure you saw Judge Kendall's order this morning. We have 30 days to address whatever is left to be resolved with discovery in this case. We would prefer not to have go back to the Court on this case but we cannot ignore our obligations to our client to have full and fair access to discoverable materials from Wells Fargo. If you would like to talk to us today please let us know when you are available.

    e. On July 28, 2017, Wells Fargo's counsel responded:

> Thanks for your email. We are happy to discuss with you, but discussion will be more fruitful following our supplemental production as we previously indicated. We are working diligently on providing you the supplemental production and will be able to provide to you early next week, in addition to addressing the other issues raised by the discovery order.

    f. Despite its previous assurances to the contrary, Wells Fargo did not provide its supplementation during the week ending July 28, 2017.

    g. On July 28, 2017, Mr. Wooten responded in a more substantive email expressing concern that (a) Wells Fargo's counsel did not appear to have any idea about the substantive content of the supplement, (b) whether the supplement addressed the myriad production issues the parties had discussed, (c) expressing deep concern over Wells Fargo's obvious efforts to thwart discovery (d) expressing concern that Mayer Brown was acquiescing in the wrongful conduct of Wells Fargo with respect to discovery; (e) imploring opposing colleagues to get control of the situation and remedy the deficiencies. Wells Fargo did not respond.

    h. On August 1, 2017, Johnson's counsel (Wooten) again emailed seeking the supplementation. The supplementation, 868 additional pages (WF002048-002916), was not provided until August 2, 2017 at nearly 5 p.m.

7

      i. Johnson's counsel undertook an immediate review of the 868 pages. At approximately 11:34 p.m. on August 2, 2017, Johnson's counsel sent a letter to Wells, illuminating all of the deficiencies with the supplemental production, and repeated the request to meet and confer on these issues. See Exhibit A attached hereto.

      j. On August 3, 2017, Wells Fargo's counsel responded, stating:

> We made yesterday's supplemental production and have been preparing revised written discovery responses in light of Judge Valdez's order, which we have been complying with as soon as reasonably possible. We are also now reviewing your letter of late last night. With respect to the letter's list of 11 specified categories, certified/supplemented discovery responses will address Nos. 1-4. In addition, we have already followed up today with our client on Nos. 5-11 that you have raised in your letter to see what can be located, and we will let you know what comes of that effort as soon as possible. Accordingly, we suggest discussing these issues in a meet-and-confer next week once we have had the opportunity to review and address your letter's categories, complete the inquiry and provide a full response.

      k. On August 4, 2017, Johnson's counsel requested clarification from Wells Fargo, stating:

> Thank you for your response to our letter. However, I need clarification of your response. You indicated: "With respect to the letter's list of 11 specified categories, certified/supplemented discovery responses will address Nos. 1-4." Do you mean by this indication that you are seeking further supplementation of your discovery responses to address these areas or do you mean that you believe your supplementation provided earlier in the week covered these areas? We obviously would like to resolve this without any further court involvement but the actions of Wells Fargo may have taken that option away from us all. I am available today if you would like to discuss this further. I believe Ross will be available this afternoon as well.

23. As of this writing no response or clarification has been received from Wells Fargo. Wells Fargo's counsel has made no effort to contact Johnson's counsel or to schedule any meet and confer despite the contents of its August 3, email indicating a meet and confer would be appropriate. This is also despite the fact that Johnson's counsel has stated that further deposition examination may be necessary within the limited additional discovery period and the fact that time is obviously of the essence with the discovery cutoff occurring in a mere 21 days.

24. On July 26, 2017, Johnson filed a motion to extend fact discovery close that was set for July 28, 2017, in light of the Rule 30(b)(6) testimony and the unresolved issues that somehow remain after 18 months. [DKT #130.] Judge Kendall extended the discovery cutoff to August 28, 2017 as the final extension. [DKT #131.]

25. However, Wells Fargo has squandered another 24 days since this Court's July 14, 2017 order, and 16 days since the Rule 30(b)(6) deposition. Wells Fargo failed to comply with every part of this Court's July 14, 2017 order. Additionally, none of the deficiencies exposed at the Rule 30(b)(6) deposition have been cured.

26. Given the limited time left to complete discovery and Wells Fargo's continued intransigence, the undersigned was left with no choice but to file this motion to protect his clients' rights.

27. After more than 18 months of these tactics from Wells Fargo, either assisted by or ratified by its counsel, it is appropriate for the Court to bring this misconduct to an end.

28. Wells Fargo's counsel has avoided all communications with Johnsons' counsel other than gratuitous and unproductive emails noted *infra*.

29. The undersigned certifies that he and his co-counsel made reasonable efforts to resolve the dispute, but those efforts have been unsuccessful. *See* Fed. R. Civ. P. 37(a)(2); LR 37.2.

## ARGUMENT

Most of the information sought by Johnson has been addressed in every letter, phone call, and email between these parties, and now by the Court's July 14, 2017 order. Further, the items that were disclosed during the recent corporate depositions served to establish Wells Fargo's previous positions were, at best, disingenuous, at worst, the product of Mayer Brown's apparent acquiescence to, and complicity with, Wells Fargo's Legal Department's efforts to thwart discovery in this case. All the materials sought herein address critical disputed facts, are readily

9

accessible and available to Wells Fargo, and should have long ago been produced as part of the discovery process. Wells Fargo chose simply to ignore its obligations and abuse the discovery process to its own ends throughout this case.

### A. The Consolidated Notes Log

In January 2016, Wells Fargo produced a consolidated notes log covering the period between October 2015 through January 2016. No other consolidated notes have been produced by Wells Fargo at any time. The parties essentially agree the critical time period in this case includes January 2014 through June 2015. The dispute surrounding the loan modification began at the beginning of 2014 and the break-in occurred in May 2015.

On July 21, 2017, Wells Fargo testified that a consolidated notes log provides a complete history of all notes from all departments, and that at least two or three years of notes are readily available (unarchived) at any point in time in Wells Fargo's system before being archived.

Taking Wells Fargo's shorter two year timeframe, at the time of Wells Fargo's January 2016 production, the available consolidated notes log would have covered the previous two years, or January 2014 to January 2016. Therefore, Wells Fargo *chose* to omit the relevant consolidated notes log from January 2014 through May 2015, while tendering a borderline meaningless timeframe from June 2015 through January 2016. This production omitted all of the critical events in this lawsuit.

What's more, Wells Fargo also testified that the notes and servicing records for Johnson's account have continued to be archived during this litigation, despite the existence of a claimed litigation hold on the file. In other words, over the course of this litigation, Wells Fargo has allowed 20 additional months of its notes log and servicing records to be archived.

In light of Wells Fargo's testimony, Wells Fargo's previous claims of undue burden and that it was attempting to locate the consolidated notes log for the relevant period were entirely

false in absolute terms. There is no burden in producing this material whatsoever, nor is any search necessary. This is a basic document that is a part of Wells Fargo's system of record that can be easily printed at any time. This, in conjunction with Wells Fargo's failure to preserve evidence while allowing 20 months of records to be archived during the course of this litigation, is indicative of its of bad faith and lack of candor to the tribunal. This can only be viewed as an intentional abuse of the discovery process. Johnson's counsel wonders if there is a sanction for a firm such as Mayer Brown and its client who would engage in such a blatantly dishonest, 18-month game that ***should have been resolved*** simply by having any Wells Fargo's employee in the servicing department print these readily available, standard servicing documents from Wells Fargo's system of record.

    **B. The Identities of individuals involved with the Johnsons or the subject property**

Wells Fargo has not identified any individuals involved with Johnson or the subject property, or certified its responses with respect to Interrogatories Nos. 1 and 2, and is therefore in violation of the Court's July 14, 2017 order. [DKT #126 p. 6]

    **C. Policies and Procedures related to Loss Mitigation**

Wells Fargo has not produced its policies and procedures (Johnson has limited this request to loss mitigation policies and procedures), or certified its responses, and is therefore in violation of the Court's July 14, 2017 order. [DKT #126 pp. 9-10]

    **D. Pattern Evidence or Punitive Damages Discovery**

Wells Fargo has not produced any relevant pattern or punitive damages discovery related to the issues, claims, or defenses in this case, nor any supplements to RTP Nos. 13-19 and 35-39, as order by the Court. [DKT #126 pp. 10]

Wells Fargo testified Wells Fargo's own employees take all phone calls related to property preservation complaints. One email even shows Wells Fargo has an "Asset

Management and Preservation Complaint Resolution Department." Clearly, this department handles the precise types of similar instances that were requested by Johnson and ordered to be produced. As a sophisticated financial institution, Wells Fargo obviously has a system to track the work of this department including records of the number and types of complaints received, the efforts to investigate those complaints, the efforts to resolve those complaints and the results of those efforts. However, Wells Fargo has brazenly stood before this Court and claimed no such records exist.

### E. Information from the FEE1 and DDCH Screens

Wells Fargo's mortgage servicing system of record (referred to as MSP) includes a number of various screens (similar to browser windows or tabs). Two of those screens deal with charges made to a consumer's account: FEE1 and DDCH. Wells Fargo acknowledged it has not produced the information from either its FEE1 screen or DDCH screen, and that these screens would show whether Wells Fargo paid for the removal of the personal property from the Johnsons' home.

Within the information available to Wells Fargo through its system of record, Wells Fargo failed to produce five additional relevant categories of documents specific to Johnson's loan account and property:

  i. Invoices from ServiceLink to Wells Fargo for property preservation services.
  ii. Remittances from Wells Fargo to ServiceLink for property preservation services.
  iii. Any information from the investor portal with HUD regarding requests to approve property preservation services on this property.
  iv. Any invoices to HUD for property preservation services.
  v. Any reimbursements from HUD for property preservation services.

As Wells Fargo testified, these materials would be maintained in Wells Fargo's servicing system of record (MSP); the invoices and payments to and from ServiceLink and HUD are

literally at the fingertips of any Wells Fargo servicing employee through MSP and the HUD portal.[2].

Wells Fargo's theory in this case that Defendant Burch was a rogue "on the ground" vendor who acted without Wells Fargo's knowledge or consent (*i.e.* Burch was never ordered to remove personal property from Johnson's home). Production of these materials from the HUD portal would show: (a) whether anyone made a request to HUD to approve the removal of Johnson's personal property, (b) any invoices submitted for payment for this activity, and (c) any remittances by HUD to Wells Fargo for this work.

This evidence would is highly probative and would contradict (or support) Wells Fargo's current defense position in this litigation. Normally, parties to this type of transaction would not pay an invoice for work that was not ordered and approved. In this daisy chain of actors, it is undisputed that Burch invoiced and was paid by TruAssets, and TruAssets invoiced and was paid by ServiceLink. What remains a mystery is whether ServiceLink invoiced anyone and was paid by anyone and whether Wells Fargo sought or received reimbursement from HUD for these same services.

The obvious inference to be drawn from concealment of this information is that the information would destroy Wells Fargo's defense theory. Wells Fargo acknowledged this material is directly relevant to its defenses in this case in testimony, yet continues to refuse production of the materials.

---

[2] As to points iii. through v. above, Wells Fargo revealed that ServiceLink would typically apply through the "investor portal" with HUD, apparently accessible by both ServiceLink and Wells Fargo, for HUD to approve property preservation services. If approved, ServiceLink would complete the services (by ordering its vendors to complete them), and upon completion, submit an invoice in the name of Wells Fargo for the work performed. HUD would then reimburse Wells Fargo for the approved property preservation services on HUD insured or owned properties. There is confusion as to whether ServiceLink has the ability to fully access the HUD portal and could gather the requested information. There is no doubt Wells Fargo has full access to this material.

These materials were clearly covered in the discovery requests served by Johnson, and the concealment was revealed by corporate testimony only after being placed under oath. Wells Fargo still has not produced this material since the deposition or at any other time.

The idea that this material remains undisclosed is disturbing, given the testimony and the irrefutable significance of the materials. Johnson contends the failure to disclose this information was intentional on the part of Wells Fargo, and that the Court would be justified in imposing significant sanctions against Wells Fargo for its conduct with respect to this data. This is a sin of commission, not a sin of omission. This evidence would deprive Wells Fargo of its chosen defense in this case.

### REQUEST FOR RELIEF

Any theatrics aside, the history of this litigation proves that Wells Fargo believes it is above the law and beyond the reach of this Court's justice. The production of everything described in the motion would take minimal time and effort. Wells Fargo has been shown to have ignored its obligations under the Rules, affirmatively concealed evidence, engaged in delay and obstructionist tactics, abused the discovery process, and quite simply, refused to comply with the Court's July 14, 2017 order. This is a "too big to fail" corporate defendant thumbing its nose at the discovery rules and Court orders.

A party who fails to disclose as required by Rule 26(a) or provides false information without "substantial justification" may be sanctioned unless such failure is "harmless." *Musser v. Gentiva Health Serv.,* 356 F.3d 751, 755 (7th Cir.2004) (citing Fed. R. Civ. P. 37(c)(1)). "Where a party has received adequate notice and fails to comply with discovery proceedings set to occur by a specific date, a court may impose sanctions without a formal motion to compel the discovery." *Tamari v. Bache & Co.*, 729 F.2d 469, 472 (7th Cir. 1984). *See also Fautek v.*

*Montgomery Ward & Co.*, 96 F.R.D. 141, 145 n.5 (N.D. Ill. 1982) (dilatory and partial compliance with discovery requests is actionable under Rule 37(d)).

Wells Fargo's conduct here has severely prejudiced Johnson. First, Johnson has now been forced to file three motions to compel against Wells Fargo. Second, Johnson was forced to spend a great deal of the Rule 30(b)(6) simply getting Wells Fargo to admit much material had not been produced. Third, Wells Fargo's corporate representative was unprepared and lacked many records which would have provided the information necessary to respond. Fourth, 20 more months of Wells Fargo's records have been archived. Fifth, we are 21 days from the final discovery cutoff, and Johnson has been denied the opportunity to fully and fairly examine Wells Fargo on the complete record and denied critical evidence which would, in theory, destroy Wells Fargo's defense in this matter.

Even if Wells Fargo could immediately hand over the materials, it is questionable whether the parties could reconvene the deposition of Wells Fargo to conduct an examination concerning these materials prior to August 28, 2017 discovery cutoff.

Johnson raised concerns in the second motion to compel involving Wells Fargo's noncompliance with Rule 34(b)(2)(C), especially in light of the boilerplate objections without any evidence or certification to substantiate the objections. On one hand, the objections (overly broad, irrelevant, unduly burdensome, proportionality, etc.) have proven to be frivolous. On the other hand, Wells Fargo has made the conscious decision to withhold these materials. The non-compliance with Rule 34(b)(2)(C) was far from harmless, as Wells Fargo played "keep away" with many of its discoverable and relevant business records, while keeping Johnson guessing what responsive business records actually existed. This behavior, literally over the entire length of this litigation, cannot be acceptable. Johnson contends that Wells Fargo's conduct here rises to

the type of obstructionist and abusive conduct which warrants striking Wells Fargo's answer and affirmative defenses and entering a default judgment as to liability against Wells Fargo.

Wells Fargo's has consciously made many decisions to actively thwart discovery throughout this case. Johnson believes the only adequate remedy is an extreme sanction against Wells Fargo which will make an example out of Wells Fargo and demonstrate that these tactics and this litigation strategy is unacceptable. Wells Fargo could not possibly justify the following actions (or inactions):

   a. A complete failure to comply with the Court's July 14, 2017 order, refusing to produce any of the specified materials, providing no certifications, and identifying no individuals or employees;
   b. Providing a consolidated notes log covering an unimportant six month period, while withholding the previous 18-month period covering the entire critical time period.
   c. Allowing the notes log and other servicing records to be archived each month over the last 20 months of litigation.
   d. Having Wells Fargo's Legal Department control the responses to discovery, with no efforts from anyone else at Wells Fargo other than the Legal Department to respond;
   e. Producing a corporate deponent who was both entirely unprepared to answer questions on many topics, and only preparing through a review of the documents as arranged by Wells Fargo's Legal Department.
   f. Withholding admittedly critical documents related to the property preservation services throughout the litigation.

This is not an example of a lawyer or firm being overworked or missing a deadline; this is a year and a half of misrepresentations, half-productions, and half-truths.

A district court's decision to sanction, including entry of a default judgment as a sanction, under Rule 37 or the court's inherent authority need only be established by a preponderance of the evidence. *Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 781 (7th Cir.2016). Wells Fargo's failure to comply with fundamental discovery obligations, this Court's order and Wells Fargo's obstructionist tactics throughout this litigation is sufficient evidence for this Court to find Wells Fargo deserving of a severe sanction. A substantial sanction here would make an appropriate

16

example of Wells Fargo for its misconduct, rebalance the scales for Johnson to allow for fair litigation on the merits, and deny Wells Fargo the benefit of its misconduct.

Johnson request the Court strike Wells Fargo's answer and any defenses and enter default judgment as to liability against Wells Fargo leaving only a trial on damages. Such a ruling would also discourage other litigants from flaunting the Rules and the discovery process for their own gain.

WHEREFORE, Plaintiffs Kevin and Betina Johnson pray for an order compelling the production of the discovery set forth in this motion, appropriate sanctions up to and including entering a default against Wells Fargo as to liability, costs and fees, and any other just and equitable relief.

Date: August 7, 2017 　　　　　　　　　　　　　　　　　Respectfully Submitted,

　　　　　　　　　　　　　　　　　　　　　　　　　　　　*/s/ Nick Wooten*
　　　　　　　　　　　　　　　　　　　　　　　　　　　　Nick Wooten
　　　　　　　　　　　　　　　　　　　　　　　　　　　　Nick Wooten LLC
　　　　　　　　　　　　　　　　　　　　　　　　　　　　4935 Bay Hill Drive
　　　　　　　　　　　　　　　　　　　　　　　　　　　　Conway, AR 72034
　　　　　　　　　　　　　　　　　　　　　　　　　　　　nick@nickwooten.com
　　　　　　　　　　　　　　　　　　　　　　　　　　　　*Counsel for Plaintiffs*